J-A08018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                            :            PENNSYLVANIA
                                            :
                 v.                     :
                                            :
                                            :
BRENDAN ALEXANDE LINTON         :
                                            :
              Appellant       :     No. 747 WDA 2022

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0001351-2021

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:         **FILED:  July 21, 2023**

Brendan Alexande Linton ("Linton") appeals from the judgment of sentence imposed following his conviction for pedalcycle operated at a safe speed not to impede traffic.[1]  We affirm.

The relevant factual and procedural history of this matter is as follows. On July 31, 2021, Linton was operating his bicycle well-below the posted speed limits on Evans City Road (Route 68) in Butler Township, and consequently impeding the flow of vehicular traffic.  Trooper Joshua Osche charged Linton with several summary offenses, and the matter proceeded to a summary trial.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. 3364(b)(2).

At trial, Trooper Osche testified that when he observed Linton riding his bicycle in the westbound traffic lane of Route 68, he recalled hearing complaints of slow-moving bicycles impeding traffic in the area. *See* N.T., 5/26/22, at 6. The trooper moved into the westbound traffic lane to follow Linton's direction of travel and activated his dashboard camera to record Linton's actions. *Id*. The trooper indicated that Route 68 is a "heavily traveled" two-lane roadway, and that "there were several vehicles queued in traffic following behind . . . Linton." *Id*. at 8. The trooper noted that there was an "extremely wide" berm to the side of the roadway in this area; however, Linton took no "steps to accommodate the flow of traffic, pull over onto the berm, or even acknowledge any other vehicles behind him." *Id*. The trooper also explained that several vehicles tried to get around Linton, but there was oncoming traffic. *Id*. The trooper indicated that he also tried to get around Linton but was unable to do so due to oncoming traffic. *Id*. at 9.

Ultimately, the trooper initiated a traffic stop. *Id*. Upon being pulled over by the trooper, Linton refused to provide his identification and claimed that he was not required to do so. *Id*. Although Linton refused to identify himself, the trooper recalled his name from prior similar offenses, and was able to pull up Linton's name, address, and photograph on his computer. *Id*. at 10. The trooper returned from the vehicle and asked Linton to confirm his name and current address, which he did. *Id*. The trooper then informed Linton that a citation would be mailed to him. *Id*. Linton was charged with

pedalcycle operated at a safe speed not to impede traffic, disorderly conduct, and investigation by police officers.

The eight-minute video taken from the trooper's dashboard camera was then played for the court. *Id*. at 12. The video showed that the trooper followed Linton for several miles on a clear sunny day. At times, Linton operated his bicycle in the middle of the westbound traffic lane, and at other times, he operated it near the right side of the lane, but always within the lane. Because of nearly continuous on-coming traffic, several cars (including the trooper's vehicle) could not get around Linton. As the trooper was following him, Linton's bicycle passed from a speed zone of 45 miles per hour ("mph") into a speed zone of 55-mph zone. In the video, the trooper noted that Linton's speed in the 55-mph zone was nineteen mph, and that it had been as slow as twelve mph in the 45-mph zone. The video showed that there was a wide berm on the right side of the road that Linton could have used but did not do so. *See* Commonwealth Exhibit 1; *see also* N.T., 5/26/22, at 12-14 (wherein the audio portions of the video were transcribed into the record).

Linton took the stand and testified that the section of the road on which he was travelling had a berm that was "particularly hazardous." N.T., 5/26/22, at 25. According to Linton, there were "some cracks and piles of . . . gravel and rock and sand and items of that nature[,]" as well as "multiple potholes the size of my head." *Id*. Linton also testified that at one point in the video, there is a construction vehicle parked on the side of the road with

flashing lights, a pedestrian getting mail out of a mailbox, and rumble strips to the right of the roadway at an intersection. *Id*. at 26. Linton stated that he had no "obligation . . . to pull over when practical [so as not to impede traffic or] to provide vehicles a safe passage if they can't pass [him]." *Id*. at 32. Linton further stated that he had no obligation to look behind himself or take any actions to alleviate any motor vehicle traffic behind him. *Id*. at 34. Following the summary trial, the trial court found Linton guilty of pedalcycle operated at a safe speed not to impede traffic and imposed a twenty-five-dollar fine. Linton filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Linton raises the following issue for our review:

> Was the evidence presented at trial insufficient to sustain Linton's conviction for a violation of 75 Pa.C.S.[A.] § 3364(b)(2) because it was quantitatively and/or qualitatively insufficient to support a finding that Linton operated his pedalcycle at an unsafe or unreasonable speed, or that Linton failed to use reasonable efforts so as not to impede the normal and reasonable movement of traffic and where it appears that liability was predicated on the mere fact that Linton was operating a pedalcycle in the road?

Linton's Brief at 6.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes

each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). The trier of fact is free to believe, all, part, or none of the evidence presented when making credibility determinations. ***See Commonwealth v. Beasley***, 138 A.3d 39, 45 (Pa. Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa. Super. 2016).

Pursuant to section 3364(b)(2), "[a] pedalcycle may be operated at a safe and reasonable speed appropriate for the pedalcycle. A pedalcycle operator shall use reasonable efforts so as not to impede the normal and reasonable movement of traffic." 75 Pa.C.S.A. § 3364(b)(2).

Linton concedes that he was travelling between twelve and nineteen miles per hour on Route 68 but argues that he was not impeding traffic "as several vehicles were able to pass him." Linton's Brief at 17. Linton further claims that it was necessary for him to travel in the traffic lane to avoid hazards, including a parked construction vehicle, a pedestrian, potholes, and a set of rumble strips.[2] Linton also relies heavily on the PennDot bicycle manual and contends that his bicycle is a vehicle.

_____

[2] Linton additionally claims that there was a sign saying, "keep off the shoulder." Linton's Brief at 17. However, at trial, Linton was cross-examined regarding the location of the sign and conceded that this sign was far off in
*(Footnote Continued Next Page)*

The trial court determined that Linton's issue was meritless. The court

reasoned:

> The trooper's testimony and the [dashboard camera] video plainly point out the [Linton] was in violation of 75 Pa.C.S.A. § 3364(b)(2). The roadway in question has posted 45 and 55 [mph] limits. [Linton] was traveling from 12 [mph] to 25 [mph]. Clearly, [Linton] was impeding "the normal and reasonable movement of traffic." Additionally, the drivers of the motor vehicles who attempted to pass and who indeed did drive around [Linton] were potentially placing themselves, [Linton,] and the oncoming traffic in grave danger. Lastly, [Linton] should have moved to the berm area to the right of the white fog line when motor vehicles were behind him.

Trial Court Opinion, 8/15/22, at 2-3.

Based on our review, we conclude that the evidence of record was

sufficient to support a conviction under section 3364(b)(2). The

Commonwealth was required to establish either that the bicycle or pedalcycle

was not operated at a safe and reasonable speed appropriate for that

pedalcycle, or that the pedalcycle operator failed to use reasonable efforts so

as not to impede the normal and reasonable movement of traffic. Here, the

Commonwealth presented both the testimony of the trooper and the video,

both of which established that Linton was impeding traffic on a busy two-lane

roadway by traveling in the traffic lane at a speed of twelve mph in a 45-mph

zone and nineteen mph in a 55-mph zone. The testimony and video also

clearly establish that Linton failed to use reasonable efforts so as not to

_____

the distance ahead on the roadway and had no bearing on the section of roadway at issue in this litigation. *See* N.T., 5/26/22, at 34.

impede the normal and reasonable movement of traffic by using the wide berm next to him. Although Linton testified at trial that there were hazards on the berm (such as piles of cracks, gravel, rock, sand, and potholes the size of his head), he provided no evidence at trial of any such hazard (*i.e.*, photographs). Indeed, neither Linton nor his counsel pointed out any such hazards in the eight-minute video which, at all times, showed the berm area. Thus, the only evidence of any such hazards on the berm area was Linton's self-serving testimony which the trial court apparently found non-credible. Moreover, although the video does show a construction vehicle, a pedestrian, and rumble strips, Linton failed to demonstrate why he could not simply go around the single vehicle, the single pedestrian, and the rumble strips, and return to the berm over the remainder of the lengthy stretch of the roadway on which he was travelling. Accordingly, Linton's sufficiency challenge merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2023